Avram E. Frisch, Esq.
The Law Office of Avram E.
Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------------- x

**METROPOLITAN WOODWORKING, INC. , METROPOLITAN ARCHITECTURAL WOODWORK, LLC., SPRINGFIELD OFFICE, CORP. SPRINGFIELD WOOD WORKSHOP, CORP., CONSTRUCTION MACHINE DEVICES, LLC., TRANSWORLD MATERIAL RESOURCES,LLC, LONGBOW, LLC, DARKEN INSTALLATIONS, LLC AND DARREN COMMANDER, FRANCISCO SCAGLIA, RALPH SPINELLI,**

Docket No.

**COMPLAINT AND JURY DEMAND**

                              Plaintiffs,

                  - against -

**SHAWN M. LATOURETTE IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; AND MATTHEW PLATKIN IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NEW JERSEY;**

                              Defendants.

------------------------------------------------------------- x

## COMPLAINT

Plaintiffs, by way of complaint against the Defendants, allege and say:

## JURISDICTION AND VENUE

1.  This is an action for a declaratory judgment that the New Jersey Department of Environmental Protection is not permitted to engaged in warrantless searches of Plaintiffs' business and similarly situated businesses in the State of New Jersey and for injunctive relief.

2.  This court has jurisdiction pursuant to 28 U.S.C. § 1343, and pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3.  This Court also has jurisdiction over related state law claims pursuant to 28. U.S.C. § 1367.

4.  Venue is properly laid in the District of New Jersey, pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this district.

## THE PARTIES

5.  Plaintiff, Metropolitan Woodworking, Inc. ("Metro") has its principal place of business at 5 Cornell Parkway, Springfield, New Jersey, and is a manufacturer of custom architectural woodwork products for use in high end commercial and residential construction projects. Each of the other corporate defendants is an affiliate of Metro and participates in the overall business of Metro or previously was engaged in the business of Metro.

6.  Plaintiffs Francisco Scaglia, Ralph Spinelli and Carol Patino are each employees of Metro who have been wrongfully threatened with fines by officers of the New Jersey Department of Environmental Protection for refusing warrantless access to the premises of Metro.

7.  Plaintiff Darren Commander is the president of Metro and has a mailing address at 5 Cornell Parkway, Springfield, New Jersey.

8.  The New Jersey Department of Environmental Protection ("DEP") is a department of the State of New Jersey and its commissioner is Defendant Shawn M. Latourette ("Latourette"). DEP is charged with enforcement of state and Federal environmental laws in the State of New Jersey.

9.  Defendant Matthew J. Platkin is a citizen of New Jersey and the Attorney General of the State of New Jersey. He is the State's chief law enforcement officer, and heads the State's Department of Law and Public Safety. N.J. Stat. Ann. § 52:17B-2. In light of these duties, Attorney General Platkin has responsibility for enforcing the laws at issue in this action and representing DEP in its activities. In that capacity, he is charged with assisting DEP with its program of inspections and enforcement of fines and other remedies imposed by DEP.  He is sued in his official capacity. The Attorney General's principal place of operation is located at Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08611.

## **FACTUAL BACKGROUND**

10. This matter started to arise in approximately 2009.  At that time, a DEP inspector named Peter Madan first introduced himself to the Plaintiffs (and their employees.  In his capacity as an inspector, he entered the vestibule of the Lehigh Business Center at 601 Lehigh Avenue, Union, New Jersey where Metro's predecessor was then a tenant along with seven other tenants.

11. The entrance he used was locked and contained a window to a receptionist, who served numerous entities in the building.

12. In addition, there were several other entrances with numerous tenants, some also engaged in manufacturing at the location.

13.  Madan approached the 17 year old female summer intern, named Cynthia who was at the reception desk and demanded that he be permitted to enter the building.

14. The intern, who was a foreign exchange student hired at the request of Kean University to assist her with staying in the country during the summer, asked Mr. Madan to identify the company or individual he was there to speak with.

15. Madan immediately began to harass this intern, shouted at her that he would impose a $10,000 fine on her personally and started shouting at her.

16. The intern began to cry and stated she would get her supervisor to handle Mr. Madan's request.  This caused Mr. Madan to be angry, as upon information and belief, he believed that his badge should be automatically honored, even by a scared student intern.

17. Madan knew, or should have known as a long time inspector for NJDEP, that the receptionist would not have authority to permit him entry to the building.  This was true despite the fact that he waved a laminated placard indicating a statute that he alleged permitted him unfettered access to private property.

18. At no point did Mr. Madan indicate that he was conducting an inspection of a specific licensee or that there was any particular reason for his inspection.  He referred to the inspection as a "compliance inspection of the entire building."

19. At this point, Mr. Commander came out to deal with the commotion caused by Madan.  Mr. Commander worked in the office portion of the building as one of the owners of Metropolitan Architectural Woodwork, LLC.

20. Mr. Commander asked Madan what he needed, and Madan demanded immediate entry to "the entire building."  Madan claimed the right to entry pursuant to New Jersey law, which

allegedly permitted DEP inspectors to make warrantless inspections at any time and place in the State of New Jersey.

21. Mr. Commander explained that he had no ability to give access to the entire building, and Mr. Madan demanded access to Mr. Commander's workspace.

22. Mr. Commander calmly explained that the company was in the midst of an insurance audit and that he would gladly work with Mr. Madan to schedule his inspection later in the week. Madan screamed at Mr. Commander that the statute permitted him immediate access to the entire building.

23. Mr. Commander also explained that Metro was not the only tenant and that there were numerous other tenants and that Mr. Commander could not give him access to those portions of the building.

24. Madan continued to shout and demand access and threatening $10,000 per day fines.  Mr. Commander responded that due to his insane rantings, threats and aggressive behavior that Madan should obtain a warrant in accordance with the 4th Amendment.  Mr. Commander also stated that if Madan attempted to enter or refused to leave that the local police would be called.  Madan attempted to push his way in.  He stood for some time ranting at anyone he could see through the window and kicking at the door.

25. Mr. Commander was fearful for the safety of himself and his employees.  Because of this, Mr. Commander closed the door and walked away. Madan stayed in the vestibule yelling and banging on the door and the police were called.

26. The Union Township police arrived shortly thereafter and informed Mr. Madan that he needed a warrant to enter and that he must not return without a warrant, and that any further attempts to enter without a warrant would result in his arrest.

27. Madan relied on guidance from DEP that they have unlimited and unrestricted access to all business premises in the State of New Jersey.  Madan was infuriated that he was asked to schedule an appointment because he claimed that "over his past 20 years at the DEP, that Darren Commander was the only person who refused to allow him entry into a facility."

28. Due to this attitude, Madan has embarked on a years' long harassment campaign against Metropolitan, aided by inspectors King and Lockward.

29. Madan eventually obtained search warrants in 2010.  After the 2010 search DEP imposed numerous fines on Metropolitan and Mr. Commander, largely for items that were not actually in violation of the applicable laws and simply to harass Mr. Commander and Metro for their insistence on their constitutional rights, along with penalties for refusing warrantless access.

30. Mr. Madan then proceeded to obtain a warrant solely due to the fact that Mr. Commander had the nerve to tell him no when he demanded an immediate inspection.  This was the first of many acts taken by Mr. Madan and his co-conspirators to deny Mr. Commander's constitutional rights.

31. In 2016, Madan found out that Metro had relocated to its current office at 5 Cornell Parkway, Springfield, New Jersey (the "Cornell Parkway Property").  He again began demanding access at any time and hour.

32. This entity is not the same company as Metropolitan Architectural Woodwork, LLC, the tenant harassed at 601 Lehigh Avenue, but is also affiliated with Mr. Commander.

33. Madan made numerous visits to the Cornell Parkway Property, again demanding access to the Cornell Parkway Property.  Mr. Commander and his employees have denied access,

but Madan habitually stands in the parking lot in order to intimidate Metro's female employees.

34. Madan has made direct threats at the individual Plaintiffs, threatening them with fines and other penalties and making them fearful for their safety.  The individual Plaintiffs are entitled to work in an environment free of government harassment, which was carried about by Madan and other NJ DEP inspectors.

35. Over the years, Mr. Madan has peered through windows, climbed into dumpsters, and taken other steps to monitor Metro's operations, despite clearly posted no-trespassing signs on the property.

36. Eventually, Madan and the New Jersey Attorney General's Office obtained a search warrant from a superior court judge in 2016, largely predicated on false or misleading statements, that allowed a search of the Cornell Parkway Property.

37. A Deputy Attorney General, relying on false statements from DEP inspectors, requested a warrant in 2016 from a judge in the Superior Court of New Jersey, Union County.  The warrant application was misleading and pretended that there had been substantial environmental violations.

38. A search was conducted on May 4, 2016, in reliance on the warrant issued by Judge McDaniel.  The warrant authorized the search for violations of the environmental laws and "records that reasonably relate to violations of the environmental acts."

39. The warrant was for the premises of Metro and no other entity, and directed that the officers be accompanied by employees of Metro throughout their time at the premises.

40. Instead, all employees of Metro and the other entities at the site were directed to vacate the premises.

41. Madan and his associates misrepresented the terms of the warrant and informed the occupants of the building that the warrant was for the whole building, when it was really only "for the offices and property of Metropolitan Woodwork, Inc."

42. Despite the fact that Metro was clearly in its rights to demand a warrant for the inspection, Madan and his fellow inspectors [FIRST NAME] King and [FIRST NAME] Lockward issued violations for failing to permit access.

43. In the 2016 search, Madan exceeded the terms of the search warrant and confiscated materials belonging to other entities that were housed in the premises and had no rational relationship to the environmental laws he was supposedly attempting to enforce.

44. DEP seized payroll records of another entity and also reviewed the company's financial records for the express purpose of determining if the company had the means to pay a fine that would be imposed.

45. Stephen Bittner, another DEP employee and Madan searched the records of Springfield Office Corp,, TJR Building Materials LLC and took vehicle information and other information unrelated to Metro or any violation of environmental laws.

46. Madan also caused DEP to issue numerous improper violations that were not based in fact or law.

47. In fact, despite numerous requests for information related to the basis of imposing the violations, the DEP has not provided any material that justifies the issuance of violations.

48. Further, Madan caused DEP to issue violations for the Plaintiff's refusal to testify against themselves in violation of the 5th amendment of the United States Constitution, violations for failure to allow Madan, King, Lockward and DEP to enter the Cornell Parkway

Property without a warrant in violation of the 4th Amendment, and violations related to equipment that was clearly not installed or in use.

49. Madan has made numerous intentional misrepresentations to various courts to obtain warrants and to support the imposition of violations against the Plaintiffs.

50. Further, DEP has posted numerous false statements about Metro on its website for the public.

51. Despite knowing that Plaintiffs will refuse him access, Madan has returned on several occasions to attempt warrantless inspections. In so doing, he acts in a threatening manner to Metro's employees, who are afraid to leave the building when he attempts to enter the premises at 5 Cornell Parkway.

52. After issuing violations on April 11, 2017, which were timely appealed by Plaintiffs to the New Jersey Office of Administrative Law on or about May 1, 2017, Madan returned on May 24, 2017 to attempt a "followup inspection." In reality, this inspection was punitive and intended to punish Plaintiffs for appealing and refusing to waive their rights under the United States Constitution to not allow warrantless searches.

53. This proceeding has been ongoing for over 7 years in the New Jersey Office of Administrative Law (the "OAL"), and no end is in sight. The Plaintiffs are entitled to a determination that they should not be subject to warrantless searches, and that past fines issued due to the refusal to permit warrantless searches are unconstitutional.

54. Similarly, on April 26, 2018, Madan drove into Metro's private parking area, attempted to pry open a doorway, broke into parked vehicles and climbed into a dumpster that was not in a public area to inspect its contents. Madan continually harasses and violates the rights of Metro and Mr. Commander (who as president of Metro has been personally fined).

55. Madan again attempted to obtain access on December __, 2018.

56. In the subsequent years, Madan and other inspectors have visited the Cornell Parkway site.

57. Due to fear of additional crippling fines, unnecessary business disruption, and endless litigation in the OAL, Plaintiffs have permitted warrantless searches in recent years.

58. New Jersey law purports to permit warrantless inspections.

*Enter and inspect any property, facility, building, premises, site or place for the purpose of investigating an actual or suspected source of pollution of the environment and conducting inspections, collecting samples, copying or photocopying documents or records, and for otherwise ascertaining compliance or noncompliance with any laws, permits, orders, codes, rules and regulations of the department. Any information relating to secret processes concerning methods of manufacture or production, obtained in the course of such inspection, investigation or determination, shall be kept confidential, except this information shall be available to the department for use, when relevant, in any administrative or judicial proceedings undertaken to administer, implement, and enforce State environmental law, but shall remain subject only to those confidentiality protections otherwise afforded by federal law and by the specific State environmental laws and regulations that the department is administering, implementing and enforcing in that particular case or instance.*

N.J. Stat. § 13:1D-9.

59. DEP has adopted regulations asserting the right to conduct warrantless inspections.  For example:

*The Department and its representatives shall have the right to enter and inspect at any time, any facility or building, or portion thereof, including all documents and equipment on the premises, in order to ascertain compliance or noncompliance with this chapter or with any preconstruction permit, certificate, operating permit, order, authorization or other legal document issued pursuant thereto, or to verify any information submitted to the Department. This right is absolute and shall not be*

*conditioned upon any action by the Department, except the presentation of appropriate credentials as requested, and compliance with appropriate safety standards.*
*N.J. Admin. Code § 7:27-1.31*

60. Similarly, DEP's general regulations permit the same.  N.J.A.C. § 7:1G-1.5.  Various other regulations in the Title 7 of the New Jersey Administrative Code provide similar language for various subunits of the DEP.

61. Plaintiffs have been subjected to such inspections by the Air Pollution, Water and Hazardous Waste inspectors.

62. The DEP's conduct, as enabled by the Attorney General, is both violative of the U.S. Constitution and the New Jersey Constitution.

63. In fact, on one occasion, DEP threatened a garbage hauler employed by Metro, Bush Brothers in order to coerce them to notify the DEP of when they were taking away Metro's dumpster so that DEP could search the dumpster without obtaining another warrant.

64. The DEP understood that it could not demonstrate probable cause for a warrant for the dumpster as the May 2016 search demonstrated that the dumpster was in compliance with all regulations.

65. Similarly, this coerced seizure of the dumpster load resulted in no violations as Metro operates in accordance with applicable regulations.

66. Madan has emailed numerous individuals stating that he hopes to put Metro out of business as part of his vendetta.

67. Plaintiffs are subject to fines in excess of one million dollars due to this conduct.

    Plaintiffs are regularly harassed by DEP and its agents and inspectors.  LaTourette is responsible for the operation of DEP and its compliance with the Constitution.

68. Platkin is the officer responsible for the actions of his deputies in carrying out their duties in support of DEP.

69. The DEP claims an unlimited right to enter the properties of New Jersey business and residents to enforce the environmental laws.

70. These inspections demands are accompanied by heavy fines that make refusal to permit inspections exceedingly expensive.

71. Without this Court's determination that such searches violate the constitution, Plaintiffs will continue to be subjected to unconstitutional searches and/or the threat of fines.

72. There is an actual case and controversy, and this Court's determination in favor of Plaintiffs will prevent the Defendants from violating the Plaintiffs' rights in the future.


WHEREFORE, Plaintiffs seek judgment against the defendants in their favor as follows:

A.   Awarding Plaintiffs actual damages, in an amount to be determined at trial;

B.   Awarding permanent injunctive relief against the Defendants prohibiting further wrongful conduct;

C.   Declaring that DEP and its officers may not make warrantless inspections on demand;

D.   Awarding Plaintiff the costs and disbursements of this action, including reasonable counsel fees, costs and reimbursements of expenses, including expert fees, in amounts to be determined by the Court;

E.   Awarding prejudgment interest; and

F.   Granting such other and further relief as is just and proper.

**THE LAW OFFICE OF AVRAM E.**

**FRISCH  LLC**

Hackensack, New Jersey
Dated: July 1, 2024

_/s/ Avram E. Frisch_____

Avram E. Frisch, Esq.

1 University Plaza, Suite 119

Hackensack, NJ 07601

201-289-5352

frischa@avifrischlaw.com

*Attorney for Plaintiff*

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

Pursuant to Local rule 11.2, the undersigned certifies that to the best of his knowledge, the within matter in controversy is not the subject of any other action pending in any other Court or of a pending arbitration proceeding nor is any action or arbitration contemplated nor are other parties required to be joined in this action, other than the administrative proceeding currently pending between DEP and certain Plaintiffs in the New Jersey Office of Administrative Law.

Hackensack, New Jersey
Dated: July 1, 2024

/s/ Avram E. Frisch
AVRAM E. FRISCH, ESQ.
Attorney for Plaintiff