Avram E. Frisch, Esq.
The Law Office of Avram E. Frisch LLC
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

------------------------------------------------------------- x

**METROPOLITAN WOODWORKING, INC. , METROPOLITAN ARCHITECTURAL WOODWORK, LLC., SPRINGFIELD OFFICE, CORP. SPRINGFIELD WOOD WORKSHOP, CORP., CONSTRUCTION MACHINE DEVICES, LLC.,** ~~TRANSWORLD MATERIAL RESOURCES,LLC, LONGBOW, LLC, DARKEN INSTALLATIONS, LLC~~ **AND DARREN COMMANDER,** ~~FRANCISCO SCAGLIA, RALPH SPINELLI,~~

Docket No. 2:24-cv-07483-CCC-MAH

**AMENDED COMPLAINT AND JURY DEMAND**

Plaintiffs,

- against -

**SHAWN M. LATOURETTE IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION; AND MATTHEW PLATKIN IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; PETER MADAN**

Defendants.

------------------------------------------------------------- x

**COMPLAINT**

Plaintiffs, by way of complaint against the Defendants, allege and say:

## JURISDICTION AND VENUE

1. This is an action for a declaratory judgment that the New Jersey Department of Environmental Protection is not permitted to engaged in warrantless searches of Plaintiffs' business and similarly situated businesses in the State of New Jersey and for injunctive relief.

2. This court has jurisdiction pursuant to 28 U.S.C. § 1343, and pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

3. ~~This Court also has jurisdiction over related state law claims pursuant to 28. U.S.C. § 1367.~~

4. ~~4.~~3. Venue is properly laid in the District of New Jersey, pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this district.

## THE PARTIES

5. ~~5.~~4. Plaintiff, Metropolitan Woodworking, Inc. ("Metro") has its principal place of business at 5 Cornell Parkway, Springfield, New Jersey~~,~~ (the "Cornell Parkway Facility"), and is a manufacturer of custom architectural woodwork products for use in high end commercial and residential construction projects. Each of the other corporate defendants is an affiliate of Metro and participates in the overall business of Metro or previously was engaged in the business of Metro.

6. ~~Plaintiffs Francisco Scaglia, Ralph Spinelli and Carol Patino are each employees of Metro who have been wrongfully threatened with fines by officers of the New Jersey Department of Environmental Protection for refusing warrantless access to the premises of Metro.~~

7.5. Plaintiff Darren Commander is the president of Metro and has a mailing address at 5 Cornell Parkway, Springfield, New Jersey. and has been targeted personally by DEP in its enforcement actions relating to inspections of 5 Cornell Parkway.

8.6. The New Jersey Department of Environmental Protection ("DEP") is a department of the State of New Jersey and its commissioner is Defendant Shawn M. Latourette ("Latourette"). DEP is charged with enforcement of state and Federal environmental laws in the State of New Jersey.

9.7. Defendant Matthew J. Platkin is a citizen of New Jersey and the Attorney General of the State of New Jersey. He is the State's chief law enforcement officer, and heads the State's Department of Law and Public Safety. N.J. Stat. Ann. § 52:17B-2. In light of these duties, Attorney General Platkin has responsibility for enforcing the laws at issue in this action and representing DEP in its activities. In that capacity, he is charged with assisting DEP with its program of inspections and enforcement of fines and other remedies imposed by DEP. He is sued in his official capacity. The Attorney General's principal place of operation is located at Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08611.

8. Defendant Peter Madan was an inspector employed by the Department of Environmental Protection. Upon information and belief, Madan has an address at 110 Forest Road, Fanwood, New Jersey.

## FACTUAL BACKGROUND

10.9. This matter started to arise in approximately 2009. At that time, a DEP inspector named Peter Madan first introduced himself to the Plaintiffs (and their employees. In his capacity as an inspector, he entered the vestibule of the Lehigh Business Center at 601

Lehigh Avenue, Union, New Jersey where Metro's predecessor was then a tenant along with seven other tenants.

11.10.    The entrance he used was locked and contained a window to a receptionist, who served numerous entities in the building.

12.11.    In addition, there were several other entrances with numerous tenants, some also engaged in manufacturing at the location.

13.12.    Madan approached the 17 year old female summer intern, named Cynthia who was at the reception desk and demanded that he be permitted to enter the building.

14.13.    The intern, who was a foreign exchange student hired at the request of Kean University to assist her with staying in the country during the summer, asked Mr. Madan to identify the company or individual he was there to speak with.

15.14.    Madan immediately began to harass this intern, shouted at her that he would impose a $10,000 fine on her personally and started shouting at her.

16.15.    The intern began to cry and stated she would get her supervisor to handle Mr. Madan's request.  This caused Mr. Madan to be angry, as upon information and belief, he believed that his badge should be automatically honored, even by a scared student intern.

17.16.    Madan knew, or should have known as a long time inspector for NJDEP, that the receptionist would not have authority to permit him entry to the building.  This was true despite the fact that he waved a laminated placard indicating a statute that he alleged permitted him unfettered access to private property.

18.17.    At no point did Mr. Madan indicate that he was conducting an inspection of a specific licensee or that there was any particular reason for his inspection.  He referred to the inspection as a "compliance inspection of the entire building."

19.18.    At this point, Mr. Commander came out to deal with the commotion caused by Madan.  Mr. Commander worked in the office portion of the building as one of the owners of Metropolitan Architectural Woodwork, LLC.

20.19.    Mr. Commander asked Madan what he needed, and Madan demanded immediate entry to "the entire building."  Madan claimed the right to entry pursuant to New Jersey law, which allegedly permitted DEP inspectors to make warrantless inspections at any time and place in the State of New Jersey.

21.20.    Mr. Commander explained that he had no ability to give access to the entire building, and Mr. Madan demanded access to Mr. Commander's workspace.

22.21.    Mr. Commander calmly explained that the company was in the midst of an insurance audit and that he would gladly work with Mr. Madan to schedule his inspection later in the week.  Madan screamed at Mr. Commander that the statute permitted him immediate access to the entire building.

23.22.    Mr. Commander also explained that Metro was not the only tenant and that there were numerous other tenants and that Mr. Commander could not give him access to those portions of the building.

24.23.    Madan continued to shout and demand access and threatening $10,000 per day fines.  Mr. Commander responded that due to his insane rantings, threats and aggressive behavior that Madan should obtain a warrant in accordance with the 4th Amendment.  Mr. Commander also stated that if Madan attempted to enter or refused to leave that the local police would be called.  Madan attempted to push his way in.  He stood for some time ranting at anyone he could see through the window and kicking at the door.

25.24. Mr. Commander was fearful for the safety of himself and his employees. Because of this, Mr. Commander closed the door and walked away. Madan stayed in the vestibule yelling and banging on the door and the police were called.

26.25. The Union Township police arrived shortly thereafter and informed Mr. Madan that he needed a warrant to enter and that he must not return without a warrant, and that any further attempts to enter without a warrant would result in his arrest.

27.26. Madan relied on guidance from DEP that they have unlimited and unrestricted access to all business premises in the State of New Jersey. Madan was infuriated that he was asked to schedule an appointment because he claimed that "over his past 20 years at the DEP, that Darren Commander was the only person who refused to allow him entry into a facility."

28.27. Due to this attitude, Madan has embarked on a years' long harassment campaign against Metropolitan, aided by inspectors King and Lockward.

29.28. Madan eventually obtained search warrants in 2010. After the 2010 search DEP imposed numerous fines on Metropolitan and Mr. Commander, largely for items that were not actually in violation of the applicable laws and simply to harass Mr. Commander and Metro for their insistence on their constitutional rights, along with penalties for refusing warrantless access.

30.29. Mr. Madan then proceeded to obtain a warrant solely due to the fact that Mr. Commander had the nerve to tell him no when he demanded an immediate inspection. This was the first of many acts taken by Mr. Madan and his co-conspirators to deny Mr. Commander's constitutional rights.

30. The prior actions are described herein to explain the background of the events at issue, but are not the subject of this lawsuit.

31. In 2016, Madan found out that Metro had relocated ~~to~~ its ~~current office at 5~~business to the Cornell Parkway~~, Springfield, New Jersey (the "Cornell Parkway Property").~~ Facility. He again began demanding access at any time and hour.

32. This entity is not the same company as Metropolitan Architectural Woodwork, LLC, the tenant harassed at 601 Lehigh Avenue, but is also affiliated with Mr. Commander.

33. Madan made numerous visits to the Cornell Parkway Property, again demanding access to the Cornell Parkway Property. Mr. Commander and his employees have denied access, but Madan habitually stands in the parking lot in order to intimidate Metro's female employees.

34. Madan has made direct threats at the individual Plaintiffs, threatening them with fines and other penalties and making them fearful for their safety. The individual Plaintiffs are entitled to work in an environment free of government harassment, which was carried about by Madan and other NJ DEP inspectors.

35. Over the years, Mr. Madan has peered through windows, climbed into dumpsters, and taken other steps to monitor Metro's operations, despite clearly posted no-trespassing signs on the property.

36. Eventually, Madan and the New Jersey Attorney General's Office obtained a search warrant from a superior court judge in 2016, largely predicated on false or misleading statements, that allowed a search of the Cornell Parkway Property.

37. A Deputy Attorney General, relying on false statements from DEP inspectors, requested a warrant in 2016 from a judge in the Superior Court of New Jersey, Union County. The

warrant application was misleading and pretended that there had been substantial environmental violations.

38. <ins>Upon being provided this judicial warrant, Mr. Commander and Metro permitted the search to occur without incident.</ins>

<del>38.</del>39.    A search was conducted on May 4, 2016, in reliance on the warrant issued by <ins>Superior Court</ins> Judge McDaniel.  The warrant authorized the search for violations of the environmental laws and "records that reasonably relate to violations of the environmental acts."

<del>39.</del>40.    The warrant was for the premises of Metro and no other entity, and directed that the officers be accompanied by employees of Metro throughout their time at the premises.

<del>40.</del>41.    Instead, all employees of Metro and the other entities at the site were directed to vacate the premises.

<del>41.</del>42.    Madan and his associates misrepresented the terms of the warrant and informed the occupants of the building that the warrant was for the whole building, when it was really only "for the offices and property of Metropolitan Woodwork, Inc."

<del>42.</del>43.    Despite the fact that Metro was clearly in its rights to demand a warrant for the inspection, Madan and his fellow inspectors <del>[FIRST NAME]</del><ins>Paul</ins> King and <del>[FIRST NAME]</del><ins>Daniel</ins> Lockward issued violations for failing to permit access.

<del>43.</del>44.    In the 2016 search, Madan exceeded the terms of the search warrant and confiscated materials belonging to other entities that were housed in the premises and had no rational relationship to the environmental laws he was supposedly attempting to enforce.

44.45. DEP seized payroll records of another entity and also reviewed the company's financial records for the express purpose of determining if the company had the means to pay a fine that would be imposed.

45.46. Stephen Bittner, another DEP employee and Madan searched the records of Springfield Office Corp,, TJR Building Materials LLC and took vehicle information and other information unrelated to Metro or any violation of environmental laws.

46.47. Madan also caused DEP to issue numerous improper violations that were not based in fact or law.

47. ~~In fact, despite numerous requests for information related to the basis of imposing the violations, the DEP has not provided any material that justifies the issuance of violations.~~

48. Further, Madan caused DEP to issue violations for the Plaintiff's refusal to testify against themselves in violation of the 5th amendment of the United States Constitution, violations for failure to allow Madan, King, Lockward and DEP to enter the Cornell Parkway Property without a warrant in violation of the 4th Amendment, and violations related to equipment that was clearly not installed or in use.

49. Madan has made numerous intentional misrepresentations to various courts to obtain warrants and to support the imposition of violations against the Plaintiffs.

50. Further, DEP has posted numerous false statements about Metro on its website for the public.

51. Despite knowing that Plaintiffs will refuse him access, Madan has returned on several occasions to attempt warrantless inspections. In so doing, he acts in a threatening manner to Metro's employees, who are afraid to leave the building when he attempts to enter the premises at 5 Cornell Parkway.

52. After issuing violations on April 11, 2017, which were timely appealed by Plaintiffs to the New Jersey Office of Administrative Law on or about May 1, 2017, Madan returned on May 24, 2017 to attempt a "followup inspection." In reality, this inspection was punitive and intended to punish Plaintiffs for appealing and refusing to waive their rights under the United States Constitution to not allow warrantless searches.

53. The vast majority of the penalties imposed by DEP are penalties for insisting on the issuance of a judicial warrant prior to permitting entry into the Cornell Parkway Facility.

~~53.~~54.   This proceeding has been ongoing for over ~~7~~8 years in the New Jersey Office of Administrative Law (the "OAL"), and no end is in sight. The Plaintiffs are entitled to a determination that they should not be subject to warrantless searches, and that past fines issued due to the refusal to permit warrantless searches are unconstitutional.

55. ~~Similarly, on~~The actions complained of are continuing in that the Plaintiffs are being forced to defend themselves in State administrative proceedings that are Kafkaesque in their nature.

56. The OAL (acting through Judge Jacob Gertsman) refused to address the Plaintiff's concerns about the Constitutional issues raised summarily at the commencement of the proceedings in OAL, stating that same were beyond the scope of OAL's jurisdiction on a facial challenge and that any determination would be made at the ultimate hearing on the matter.

57. After 8 years, the Plaintiffs have been forced into ancillary proceedings to defend Mr. Commander's attempt to publicize the retaliatory conduct of Mr. Madan, but have never reached a hearing on the underlying claims.

58. As the DEP determinations have yet to be finalized, the Plaintiffs have no way of knowing the outcome of the proceedings in OAL, whether OAL will reduce or disallow any of the unlawful penalties or otherwise hold the Plaintiffs responsible for any of the unconstitutional penalties imposed.

59. Plaintiffs initially relied on the Defendants' having a reliable administrative tribunal to initially exhaust their administrative remedies.

60. At this point, it is clear that the Plaintiffs have no remedy at the State level, due to OAL's inability to timely process cases.

61. Plaintiffs are thus entitled to a judicial determination that the proposed violations are in fact unconstitutional and forcing the Plaintiffs to await an endless administrative hearing process is simply not real option.

62. During the pendency of the OAL hearing process, the DEP has continued to seek and conduct warrantless inspections of the Plaintiffs' Cornell Parkway Facility.

~~54.~~63.   On April 26, 2018, Madan drove into Metro's private parking area, attempted to pry open a doorway, broke into parked vehicles and climbed into a dumpster that was not in a public area to inspect its contents.  Madan continually harasses and violates the rights of Metro and Mr. Commander (who as president of Metro has been personally fined).

~~55.~~64.   Madan again attempted to obtain access ~~on~~in or about December~~  ,~~ 2018.

~~56.~~65.   In the subsequent years, Madan and other inspectors have visited the Cornell Parkway ~~site~~Facility.

66. In November 2021, different agents of DEP requested warrantless inspections of the Cornell Parkway Facility.

67. Due to fear of additional crippling fines, unnecessary business disruption, and endless litigation in the OAL, Plaintiffs ~~have~~ permitted this inspection.

68. In discussions with the Attorney General's Office, Plaintiffs have been informed on multiple occasions that the Defendants will continue to seek warrantless ~~searches~~inspections of the Cornell Parkway Facility.

~~57.~~69.    This in ~~recent years.~~ accordance with the Defendants' understanding of New Jersey law, portions of which are set forth in the following paragraphs.

~~58.~~70.    New Jersey law purports to permit warrantless inspections.

   *Enter and inspect any property, facility, building, premises, site or place for the purpose of investigating an actual or suspected source of pollution of the environment and conducting inspections, collecting samples, copying or photocopying documents or records, and for otherwise ascertaining compliance or noncompliance with any laws, permits, orders, codes, rules and regulations of the department. Any information relating to secret processes concerning methods of manufacture or production, obtained in the course of such inspection, investigation or determination, shall be kept confidential, except this information shall be available to the department for use, when relevant, in any administrative or judicial proceedings undertaken to administer, implement, and enforce State environmental law, but shall remain subject only to those confidentiality protections otherwise afforded by federal law and by the specific State environmental laws and regulations that the department is administering, implementing and enforcing in that particular case or instance.*

   N.J. Stat. § 13:1D-9.

~~59.~~71.    DEP has adopted regulations asserting the right to conduct warrantless inspections. For example:

> *The Department and its representatives shall have the right to enter and inspect at any time, any facility or building, or portion thereof, including all documents and equipment on the premises, in order to ascertain compliance or noncompliance with this chapter or with any preconstruction permit, certificate, operating permit, order, authorization or other legal document issued pursuant thereto, or to verify any information submitted to the Department. This right is absolute and shall not be conditioned upon any action by the Department, except the presentation of appropriate credentials as requested, and compliance with appropriate safety standards.*
>
> *N.J. Admin. Code § 7:27-1.31*

60. 72.     Similarly, DEP's general regulations permit the same. N.J.A.C. § 7:1G-1.5. Various other regulations in the Title 7 of the New Jersey Administrative Code provide similar language for various subunits of the DEP.

61. 73.     Plaintiffs have been subjected to such inspections by the Air Pollution, Water and Hazardous Waste inspectors.

62. 74.     The DEP's conduct, as enabled by the Attorney General, is both violative of the U.S. Constitution and the New Jersey Constitution.

75. Plaintiffs have no ability to contest the unconstitutional actions in OAL proceedings, as the OAL disclaims the ability to review constitutional issues.

76. The Deputy Attorney General acting on behalf of the State of New Jersey in regard to the Plaintiffs has stated explicitly that the DEP will never cease its claims of a right to enter the Cornell Parkway Facility without a warrant, on demand and without any appointment or consent.

77. The most recent discussion of this matter occurred in an OAL conference in the administrative proceedings in April 2025.

78. In addition, in March 2024, an employee of DEP (presumed to be Mr. Madan) climbed into Plaintiffs' dumpster at the Cornell Parkway Facility without any explanation, invitation or warrant.

79. Plaintiffs should not have to operate with the concern that DEP will seek entry into the facility and issue penalties for failure to permit access.

80. Plaintiffs will be damaged by having to seek emergency relief upon the next threatened inspection.

63.81.  In fact, on one occasion, DEP threatened a garbage hauler employed by Metro, Bush Brothers in order to coerce them to notify the DEP of when they were taking away Metro's dumpster so that DEP could search the dumpster without obtaining another warrant.

64.82.  The DEP understood that it could not demonstrate probable cause for a warrant for the dumpster as the May 2016 search demonstrated that the dumpster was in compliance with all regulations.

65.83.  Similarly, this coerced seizure of the dumpster load resulted in no violations as Metro operates in accordance with applicable regulations.

66.84.  Madan has emailed numerous individuals stating that he hopes to put Metro out of business as part of his vendetta.

67.85.  Plaintiffs are subject to fines in excess of one million dollars due to this conduct. Plaintiffs are regularly harassed by DEP and its agents and inspectors. LaTourette is responsible for the operation of DEP and its compliance with the Constitution.

68.86.  Platkin is the officer responsible for the actions of his deputies in carrying out their duties in support of DEP.

69.87.  The DEP claims an unlimited right to enter the properties of New Jersey business and residents to enforce the environmental laws.

~~70.~~88.     These inspections demands are accompanied by heavy fines that make refusal to permit inspections exceedingly expensive.

~~71.~~89.     Without this Court's determination that such searches violate the constitution, Plaintiffs will continue to be subjected to unconstitutional searches and/or the threat of fines.

~~72.~~90.     There is an actual case and controversy, and this Court's determination in favor of Plaintiffs will prevent the Defendants from violating the Plaintiffs' rights in the future.

### FIRST COUNT

91. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

92. Plaintiffs are entitled to operate their business without fear of unconstitutional demands from the Defendants and DEP to inspect their facility.

93. The Defendants, acting through the deputy attorney general, have continued to threaten to conduct warrantless searches of the Cornell Parkway Facility.

94. Plaintiffs are entitled to a judicial determination that such searches are unconstitutional.

95. Plaintiffs allege that the actions of Defendants, including the DEP's warrantless inspections and the accompanying fines, violate the Fourth Amendment of the United States Constitution, which protects against unreasonable searches and seizures.

96. The Defendants' demands for inspections without a warrant infringe upon the Plaintiffs' rights to privacy and freedom from governmental intrusion. These actions have caused, and continue to cause, significant harm to the Plaintiffs' business operations and personal lives.

97. Plaintiffs are entitled to a declaratory judgment that such conduct by the Defendants is unconstitutional and unlawful. Without such a judgment, the Plaintiffs face ongoing violations of their constitutional rights and substantial financial burdens due to the threat of excessive fines.

## SECOND COUNT

98. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

99. Plaintiffs Commander and Metro are subject to threatened fines for exercising their constitutional rights and refusing unconstitutional warrantless access to their premises.

100. They attempted to follow the state process by filing a proceeding in OAL to challenge the fines, but the OAL is not capable of adjudicating the matter, which has now dragged on for approximately eight years.

101. OAL is not permitted to rule on constitutional claims and has failed to timely adjudicate the underlying claims.

102. Plaintiffs Commander and Metro should not be forced to live under the sword of Damocles for insisting on their constitutional rights.

## THIRD COUNT

103. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

104. Madan wrongly trespassed at the Cornell Parkway Facility in March 2024 under color of law.

105. The warrantless inspection was a violation of the Plaintiffs' constitutional rights.

106. Plaintiffs have been damaged by the conduct of Madan.

WHEREFORE, Plaintiffs seek judgment against the defendants in their favor as follows:

A. ~~Awarding Plaintiffs actual damages, in an amount to be determined at trial;~~

~~B.~~ A.	Awarding permanent injunctive relief against the Defendants prohibiting further wrongful conduct;

~~C.~~ B.	Declaring that DEP and its officers may not make warrantless inspections on demand;

C. For damages in an amount to be determined at trial against Madan;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable counsel fees, costs and reimbursements of expenses, including expert fees, in amounts to be determined by the Court;

E. Awarding prejudgment interest; and

F. Granting such other and further relief as is just and proper.

**THE LAW OFFICE OF AVRAM E. FRISCH LLC**

Hackensack, New Jersey
Dated: ~~July 1, 2024~~ May 4, 2025

 /s/ Avram E. Frisch_____
Avram E. Frisch, Esq.
1 University Plaza, Suite 119
Hackensack, NJ 07601
201-289-5352
frischa@avifrischlaw.com
*Attorney for Plaintiff*

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

Pursuant to Local rule 11.2, the undersigned certifies that to the best of his knowledge, the within matter in controversy is not the subject of any other action pending in any other Court or of a pending arbitration proceeding nor is any action or arbitration contemplated nor are other parties required to be joined in this action, other than the administrative proceeding currently pending between DEP and certain Plaintiffs in the New Jersey Office of Administrative Law.

Hackensack, New Jersey  
Dated: May 4, 2025

/s/ Avram E. Frisch_____  
AVRAM E. FRISCH, ESQ.  
Attorney for Plaintiff